UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA J. KUCH, Individually and on behalf of the Estate of LOUIS ROGER SHEFFELS, Deceased, and on behalf of K.R.S., J.M.S, and G.L.S, Minors; MICHAEL J. PALMQUIST and TESSA PALMQUIST, husband and wife; LOUIS JERALD SHEFFELS, Individually and on behalf of SHEFFELS & SON, a Washington Corporation, and LOIS SHEFFELS, husband and wife,<br><br>    Plaintiffs,<br><br>        -vs.-<br><br>UNITED STATES OF AMERICA and THE BOEING COMPANY, a Delaware Corporation,<br><br>    Defendants. | NO.   CV-03-0355-JLQ<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter came regularly on for trial by the court on the 10th day of September, 2007. The Plaintiffs appeared in person and through their attorney, James F. Leggett. The Defendant United States of America appeared through its attorneys, Justin L. Chretien and Stephen Michael Ketyer, of the United States Department of Justice, Washington, D. C. The Defendant Boeing Company appeared through its attorneys, Grant Josiah Silvernale, III and Katherine MacPherson. Evidence was introduced by the Plaintiffs and the Defendants moved for judgment as a matter of law. The court Granted that motion. Herein the court sets forth its Findings of Fact and Conclusions of Law.

ORDER - 1

## I. BACKGROUND

On the evening of May 22, 2001, pilot Louis Roger Sheffels and passenger Michael Palmquist flew in the Sheffels single-engine Piper PA-18 ("Super Cub") aircraft from the air strip at the Sheffels' family farm to overfly the Sheffels' fields surveying for weeds and insect damage to crops. Later that evening, when the aircraft did not return home, the wreckage of the Piper aircraft was discovered in a neighboring field. The pilot did not survive the crash. Palmquist was seriously injured, but survived.

On October 10, 2003, Plaintiffs Michael and Tessa Palmquist and the Estate and heirs of Louis Roger Sheffels filed a complaint against the United States and Boeing claiming that the wake turbulence of a C-17 military aircraft was the cause of the Piper's crash. Following summary judgment in favor of the Defendants by Judge Suko of this court, the Ninth Circuit Court of Appeals remanded the matter for trial on the issue of causation. In that Memorandum, the Ninth Circuit Court of Appeals affirmed the ruling that under the law of the state of Washington, the testimony of Michael Palmquist as to his memory of events after being hypnotized was not admissible.

On remand the case was reassigned to U.S. District Court Judge Robert H. Whaley, who granted the Defendants' request to bifurcate the trial of this case into phases, the first phase being the issue of causation as to the Super Cub crash including whether there "is sufficient evidence that the C-17 was in the area at the time of the crash . . . , and "a determination of whether there is sufficient evidence that the accident was caused by wake turbulence and right of way issues." (C.R. 317). Judge Whaley thereafter reassigned this case to the undersigned for trial.

## II. FINDINGS OF FACTS

On the evening of May 22, 2001, pilot and part owner of Sheffels & Son, Louis Roger Sheffels along with his employee Michael Palmquist took off in a single-engine Piper Super Cub from the air strip at the Sheffels' family ranch. The flight's purpose was to survey the

ORDER - 2

Sheffels' fields to look for weeds and insect damage to their crops. During this inspection, the Super Cub flew at 75' to 100' above the ground. Mr. Palmquist remembers flying over the Sheffels' fields and then heading toward the Wilbur, Washington airfield. Without enhanced memory from being hypnotized, Palmquist remembers nothing from that pint forward. The Piper crashed approximately three miles northwest of Wilbur, midway between the Sheffels' ranch and the Wilbur airport, and just north of Alderson Road. The aircraft crashed nose-down in rolling, open terrain.

Mr. Sheffels was fatally injured in the crash and Mr. Palmquist was seriously injured. There were no witnesses who saw the Piper crash. The preponderance of the evidence did not establish that the Piper aircraft and a military C-17 aircraft were in close proximity to each other at the time of the crash. The accident was investigated by the National Transportation Safety Board (NTSB) . There was no radar data, cockpit voice recorder data, flight deck recorder, military or Federal Aviation Administration (FAA) data for the Piper aircraft or any other aircraft claimed to be flying in the area that evening.

The investigation of the aircraft wreckage by the NTSB and Plaintiffs' expert, Jerry Wells, did not reveal anything mechanically wrong with the Piper aircraft which would have prevented it from normal flight. The NTSB investigation included the result of the autopsy on the pilot, which attributed the cause of death to blunt force impact. The autopsy did not reveal any pre-ground impact physiological failure of the Piper pilot.

After the crash, two Wilbur residents, who were friends of the Plaintiffs, came forward indicating they had seen a C-17 military aircraft on the evening of the accident flying in an east to west direction at a low altitude. Dean Dreger testified he had known Roger Sheffels his entire life. Dreger testified that on the evening of the Piper's crash, sometime right before dark, he was working in a field about 1½ miles south of Wilbur when he saw a large four-engine airplane heading over Wilbur in an east to west direction at a low elevation - he guessed at 700-900 feet above ground. The last time he saw the aircraft it appeared to be

passing over the north side of Wilbur at a height equal to the town's water tower, which was visible to him. He later identified the aircraft as a C-17 from a line up of photographs compiled by Plaintiffs' counsel.

John Laughbon is a long-time Wilbur resident who knew the decedent pilot and the Sheffels family. Several years after the accident he gave a statement and testified at trial that close to sunset on the evening of the Piper accident, while working outside at his house, located approximately three miles northeast of Wilbur, he observed a large low-flying aircraft. The aircraft came into Mr. Laughbon's view from behind his house and flew west. Mr. Laughbon thought the plane was flying at 200 to 300 feet altitude, although this was a guess. His last observation of the aircraft was three to four miles from the crash site. During his deposition, Mr. Laughbon testified he saw a gray military plane with four engines that he thought had propellers on them. He could not state at his deposition whether or not it was a C-17, which has jet engines, not propellers. He testified that he later determined it was a C-17 sometime after his deposition after reviewing a collage of photos, and believing the aircraft he saw had a tail like a C-17.

Neither of the witnesses saw any encounter between the Piper aircraft or the alleged C-17 aircraft. Both witnesses of the claimed sighting of the C-17 aircraft were located miles from the crash site. There were several low level aircraft military training routes in the general vicinity of Wilbur: Instrument Route ("IR") 324/325 (an Air Force route), IR 328 (an Air Force route), and IR 341 (a Navy route). All scheduled military flights on these routes on May 22, 2001 would appear on the Aircraft Movement Table (AMT) for that day. None of these routes had scheduled military traffic at the time of the Piper accident. The Piper crashed at between 8 and 8:30 p.m. local time.

On the early evening of the Piper crash, there was a C-17 aircraft, call sign "Kitsap 21," scheduled on the AMT to fly IR 328. IR 328 begins west of Ephrata, Washington, continues 10 miles east of Wilbur, and terminates approximately 10 to 15 miles from Moses Lake, near

ORDER - 4

the Grant County Airport. This IR Route does not traverse the Piper crash location. The Grant County airport is more than 40 miles away from the Piper crash site. Kitsap 21's aircraft commander, Major Mark Hahn, testified at trial he had no independent recollection of Kitsap 21's flight that day. However, his records filled out after completion of the flight showed he left McChord Air Force Base, near Tacoma, Washington, at 6:13 p.m. local time and returned to McChord at 9:33 p.m. Major Hahn was conducting training with other C-17 pilots practicing landings at Grant County after flying IR 328. By reviewing the flight times and the number and proficiency of landings indicated on the squadron data for the flight that day, he testified that the C-17 was not near the crash site at anytime during its flight. The mission data record indicates that during that particular flight Kitsap 21 performed "touch and go" and four full stop landings at Grant County Airport. Major Hahn further testified that the C-17 aircraft would not have gone more than five miles from the Grant County airport tower during its training at the airport, except during its direct flight back to McCord Air Force Base.

Plaintiffs suggested at trial that Major Hahn or some other pilot flew a C-17 north past Wilbur at a low altitude while cooling the aircraft's brakes and intersected the Piper's flight path. Major Hahn explained that such a maneuver would be highly unusual and completely contrary to the structured training mission that he was flying that evening. The evidence failed to establish by a preponderance of the evidence that such a C-17 flight took place at the time of the Piper accident. The preponderance of the evidence also failed to establish that a C-17 was near the accident site when the Piper aircraft crashed.

### III. STANDARD FOR JUDGMENT ON PARTIAL FINDINGS

Federal Rule of Civil Procedure 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim." In deciding whether to enter judgment pursuant to Rule 52(c), the court is not required to draw any inferences in favor of the non-moving party. *Ritchie v. United States*, 451 F. 3d 1019,

ORDER - 5

1023 (9th Cir. 2006); *Hersch v. United States*, 719 F. 2d 873, 876 (6th Cir. 1983) (upholding district court's determination pursuant to Rule 52©) that wake turbulence did not cause airplane crash). "The district court may make findings in accordance with its own view of the evidence," "and may render judgment for the defendant if it believes the plaintiff's evidence is insufficient to make out a claim." *Ritchie*, 451 F.3d at 1023.

## IV. CONCLUSIONS OF LAW

Plaintiffs assert product liability claims against Boeing and negligence claims against the United States. Under Washington law a plaintiff must establish both cause in fact and legal causation to prove such claims. *Little v. Countrywood Homes, Inc.*, 132 Wash. App. 777, 778 (2006); *Ayers By and Through Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wash.2d 747, 818 P.2d 1337 (1991). A plaintiff must establish that the harm suffered would not have occurred but for an act or omission of the defendant (cause in fact), and that "the cause in fact of the plaintiff's harm should be deemed the legal cause of that harm" (legal causation). *Little*, 132 Wash. App. at 778.

Proximate cause may be adduced as an inference from other facts proven. *Adler v. University Boat Mart*, 63 Wash.2d 334, 339, 387 P.2d 509 (1963). However,

> [w]here causation is based on circumstantial evidence, the factual determination may not rest upon conjecture; and if there is nothing more substantial to proceed upon than two theories, under one of which a defendant would be liable and under the other of which there would be no liability, a jury is not permitted to speculate on how the accident occurred.

*Sanchez v. Haddix*, 95 Wash.2d 593, 599, 627 P.2d 1312 (1981) (citing *Arnold v. Sanstol*, 43 Wash.2d 94, 99, 260 P.2d 327 (1953)). In establishing proximate cause, a plaintiff must do more than "merely suggest the possibility that proximate cause exists" or offer speculation and conjecture as to how an accident occurred. *Browne v. McDonnell Douglas Corp.*, 698 F.2d 370, 371 (9th Cir. 1982). Under Washington law, "no legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that

ORDER - 6

way, and without further showing that it could not reasonably have happened in any other way." *Gardner v. Seymour*, 27 Wash.2d 802, 808, 180 P.2d 564 (1947).

The evidence failed to establish by a preponderance of the evidence that the Piper aircraft crashed on May 22, 2001 as the proximate result of a low-flying C-17 aircraft creating wake turbulence. By reason thereof, the court is required to enter judgment for the Defendants This court is bound by the rule of law, and sympathy for the Plaintiffs in the loss of their father, husband and son cannot interfere with that rule. While the court has made its findings based upon a lack of evidence, the statement of the Israeli Supreme Court in 1993 in *In re Demjanjuk*, when it was required to overturn the conviction of the claimed "Ivan the Terrible" World War II Nazi prison guard for insufficiency of the evidence, is appropriate herein. That court stated: "The matter is closed–but not complete. The complete truth is not the prerogative of the human judge."

## V. CONCLUSION

Defendants United States **(Ct. Rec. 350)** and Boeings' Motion for Judgment on Partial Findings pursuant to Fed.R.Civ.P 52(c) (see Ct. Rec. 354) made orally at the close of Plaintiffs' evidence are **GRANTED**.

The Clerk of the Court shall enter this Order, **ENTER JUDGMENT** in favor of the Defendants dismissing the Amended Complaint and the claims therein with prejudice and provide copies to counsel. The case will shall remain open pending resolution of Plaintiffs' Motion for Reconsideration filed September 17, 2007 (Ct. Rec. 356).

**DATED** this 28th day of September, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 7